IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                    *
JAMES HINKS,
                                    *
     Plaintiff,
                                    *
         v.                                  CIVIL NO.: WDQ-09-1672
                                    *
BOARD OF EDUCATION OF
HARFORD COUNTY and                  *
NATHANIEL AKI *in his
individual and official*            *
*capacities*,
                                    *
     Defendants.
                                    *

     *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

                         MEMORANDUM OPINION

     James Hinks sued the Board of Education of Harford County ("the Board") and Nathaniel Aki ("the Defendants") for discrimination in violation of § 504 of the Rehabilitation Act and the U.S. Constitution, and for intentional infliction of emotional distress ("IIED"). For the following reasons, Hinks's motion for reconsideration will be granted, and his motion for leave to amend will be granted in part and denied in part.

I.   Background[1]

     From June 2007 to January 2008, Hinks worked for the Board as a probationary custodian at Patterson Mill Middle and High

---

[1] The facts are those well pled allegations in the Amended Complaint. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).

School in Harford County, Maryland.  Amend. Compl. ¶¶ 3, 6.
Aki was Hinks's supervisor.  *Id.* ¶ 7.  The Board terminated
Hinks the day his probationary period ended.  *Id.* ¶ 6.

Hinks suffers from a "mental deficiency and disability,"
for which Aki "criticized, humiliated, embarrassed and . . .
mock[ed]" him.  *Id.* ¶¶ 6, 8.  For example, in July 2007, Aki
directed Hinks to carry "heavy books up two flights of stairs"
in 100 degree heat.  *Id.* ¶ 8.  Hinks was hospitalized as a
result.  *Id.*  On November 1, 2007, Aki locked Hinks out of the
school and prompted other employees to throw water balloons at
him from the roof.  *Id.*

Hinks and other custodians complained to a union
representative about Aki.  *Id.*  The representative told them to
discuss their complaints with Patterson's principal, which they
did during a November 7, 2007 meeting.  *Id.*  At the meeting, the
principal assured them he would address the problem with Aki.
*Id.*  Aki continued to bully Hinks, and on December 19, 2007, he
told Hinks to report to work at 1:00 p.m. so that Hinks would
miss the school holiday party, which other custodians attended.
*Id.*

On January 2, 2008, Hinks was terminated.  *Id.*  On June
25, 2009, he sued Aki and the Board.[2]  ECF No. 1.  On April 20,

---

[2] Hinks sued the Defendants under § 504 of the Rehabilitation
Act for (1) retaliation, (2) hostile work environment, and (3)

2

2010, this Court granted the Defendants' motion to dismiss several of Hinks's claims.[3] ECF No. 26. On May 18, 2010, Hinks filed a motion for reconsideration, and on May 19, 2010, he filed a motion for leave to file a second amended complaint. ECF Nos. 30 & 32.

II. Analysis

A. Motion for Reconsideration

1. Standard of Review

Motions for reconsideration of an interlocutory order are governed by Rule 54(b), under which "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).[4] When warranted, a

---

wrongful termination. Amend. Compl. ¶ 18. He also sued the Defendants under 42 U.S.C. § 1983, and for intentional infliction of emotional distress. Amend. Compl. ¶¶ 23, 25-26.

[3] The Court dismissed all but Hinks's Rehabilitation Act retaliation claim against the Board.

[4] Hinks appears to seek reconsideration under Fed. R. Civ. P. 59. Rule 59 allows for reconsideration of a "judgment." Fed. R. Civ. P. 59(e). A "judgment" is "a decree and any order from which an appeal lies." *Auto Servs. Co. v. KPMG, LLP,* 537 F.3d 853, 856 (8th Cir. 2008)(*quoting* Fed. R. Civ. P. 54(a))(internal quotation marks omitted). Thus, "judgment" encompasses a final judgment and an appealable interlocutory order. *Id.* "Judgment" does not, however, include an order dismissing fewer than all the parties or claims unless the district court directs the entry of a final judgment under Rule 54(b). *Id.* Absent "an express determination that there is no reason for delay [in appeal]" and "an express direction for the entry of judgment . . . any order or other form of decision, however designated, which

3

district court may reconsider and modify its interlocutory orders before final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).

When deciding a motion for reconsideration of an interlocutory order, the Court may consider, but is not bound by, Rule 60(b).[5] *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir 1991). Resolution of the motion is "committed to the discretion of the district court," *Am. Canoe Ass'n,* 326 F.3d at 515, and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010)(internal citations omitted). The Court is mindful that routine reconsideration of interlocutory orders would undermine judicial economy and respect for the finality of decisions. *Disc. Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.,* 2010 WL 3522476, at * 2 (W.D. Mo. Sept. 2, 2010).

---

adjudicates fewer than all the claims" is not a "judgment." Fed. R. Civ. P. 54(b). This Court dismissed some but not all of Hinks's claims. The dismissal was not a "judgment," and Hinks's motion for reconsideration will be considered under Rule 54, not Rule 59.

[5] Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b).

4

2. Hinks's Motion for Reconsideration

Hinks seeks reconsideration of this Court's dismissal of his claims with prejudice, so that his motion for leave to file a second amended complaint may be considered.[6] Pl.'s Mot. for Reconsideration 5. He argues this is necessary to prevent injustice. *Id.* He contends that he is "deeply aggrieved and severely harmed by the actions of the Defendants" and his complaint can be amended to properly state claims against them. *Id.* The Defendants contend that his motion should be denied for lack of good cause. Defs.' Opp'n 4-5.

A district court has the discretion to grant a motion to dismiss with or without prejudice. *St. Clair v. Banker Steel Co.,* 2007 WL 45785, at *3 (W.D. Va. Jan. 5, 2007). "[P]leading

---

[6] When a complaint has been dismissed with prejudice, it may be amended under Rule 15(a) only if the party first prevails on a motion to reconsider or amend the earlier judgment. *See Jung v. Ass'n Am. Med. Colls.,* 184 Fed. Appx. 9, 12 (D.C. Cir. 2006). This Court did not state that Hinks's claims were dismissed with prejudice, but will consider the dismissal to be with prejudice for the purposes considering his motion. *See* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this [rule] and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."); 9 James Wm. Moore et al., Moore's Federal Practice § 2373 (3d ed.)("Dismissals under Rule 12(b)(6) for failure to state a claim on which relief can be granted . . . come[] within the literal language of the last sentence of Rule 41(b). Therefore, many federal courts have held that a [12(b)(6) dismissal] . . . would be a dismissal with prejudice [unless otherwise stated].").

5

is [not] a game of skill in which one misstep by counsel may be decisive to the outcome[;] the purpose of pleading is to facilitate a proper decision on the merits." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). When a plaintiff's complaint fails to state a claim, he "should generally be given a chance to amend the complaint under Fed. R. Civ. P. 15(a) before the action is dismissed with prejudice." *Finserv Cas. Corp. v. Settlement Funding, LLC*, 2010 WL 2757536, at *10 (S.D. Tex. July 13, 2010)(*citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).[7] But, dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim. *See, e.g., Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

The Court dismissed Hinks's wrongful termination and hostile work environment claims because he failed to allege facts showing that he is disabled within the meaning of the Rehabilitation Act and ADA. Mem. Op. 7-8. His 42 U.S.C. § 1983 claim against Aki was dismissed because he did not plead facts showing that Aki deprived him of a constitutional right. *Id.*

---

[7] *But see Jung,* 184 Fed. Appx. at 12 (district court did not abuse discretion in dismissing claims with prejudice under Rules 12(b)(6) and 12(c) when "plaintiffs had both the time and opportunity to request leave to amend their complaint prior to the entry of judgment").

13. His intentional infliction of emotional distress claims failed because he did not sufficiently allege that he suffered severe emotional distress. *Id.* 14. The Court dismissed Hinks's other claims because they failed as a matter of law. *Id.* 9-10.[8] Hinks's motion for reconsideration only seeks relief as to those claims dismissed for insufficient pleading.[9] His motion for reconsideration will be granted, and the Court will consider his motion for leave to amend.

    B.    Motion for Leave to Amend

Hinks seeks leave to file his Second Amended Complaint to correct deficiencies in the Amended Complaint. Pl.'s Mot. for Leave to Amend 2. The Defendants argue that the amendments would be futile. Defs.' Opp'n 5-8.

Under Fed. R. Civ. P. 15(a), leave to amend a pleading "shall be freely given when justice so requires." The decision whether to grant leave is within the sound discretion of the district court, but "the federal rules strongly favor granting leave." *Medigen of Kentucky, Inc. v. Pub. Servs. Comm'n,* 985

---

[8] His § 1983 claim against the Board was dismissed because the Board is a state agency and cannot be sued under § 1983. *Hanifee v. Bd. of Educ. Of Kent County,* 2010 U.S. Dist. LEXIS 16203 (D. Md. Feb. 24, 2010). His Rehabilitation Act claims against Aki were dismissed because the Act does not permit suits against individuals. *Hiler v. Brown,* 177 F.3d 542, 545-46 (6th Cir. 1999). Only Hinks's retaliation claim against the Board survived.

[9] Hinks does not seek reconsideration of his § 1983 claim against the Board or his Rehabilitation Act claims against Aki.

7

F.2d 164, 167-68 (4th Cir. 1993). Leave should only be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)(internal citations omitted).

    1. Wrongful Termination and Hostile Work Environment Claims

Count One of the Second Amended Complaint pleads claims against the Board under § 504 of the Rehabilitation Act[10] for wrongful termination and hostile work environment. These claims were dismissed because Hinks had not pled "facts showing that he is disabled within the meaning of the ADA." Mem. Op. 7.

To show a disability within the ADA, Hinks must allege: (1) a physical or mental impairment that substantially limits a major life activity, (2) a record of that impairment, or (3) that he is regarded as having that impairment. *Rohan v. Networks Presentation, LLC,* 375 F.3d 266, 273 (4th Cir. 2004); *Littleton v. Wal-Mart Stores, Inc.,* 231 Fed. Appx. 874, 875 (11th Cir. 2007)(plaintiff must show that his impairment substantially limits a major life activity). [11]

---

[10] 29 U.S.C. § 701 *et seq.*

[11] Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Hinks seeks to amend his complaint to add that he "suffered seizures as a child from lead paint poisoning, which caused his serious mental impairment" of "a very low grade level of elementary school . . . understanding." 2d Am. Compl. ¶ 6. He also now states that this substantially limits his ability to work. *Id.*

Very low grade level understanding caused by childhood seizures may qualify as mental impairment under the ADA.[12] Hinks has alleged that his low level of understanding substantially limits a "major life activity" because it interferes with his ability to work.[13] He has sufficiently alleged a record of the impairment; he states that he has suffered from his impairment since childhood.[14] Amendment of Hinks's hostile work environment

---

[12] *Compare Morin v. La Petite Academy, Inc.,* 2001 WL 1397296, at *2 (S.D. Ind. 2001)("cognitive learning disabilities . . . reflect[ing] significant impairment to daily reasoning skills" were ADA-qualifying) *with Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.,* 370 F.3d 763, 766-69 (8th Cir. 2004) (affirming summary judgment on ADA claim when plaintiff only showed I.Q. scores within the low-average range and evaluations "in no way indicated [he] was unable to learn").

[13] Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). *See also Rohan,* 375 F.3d at 274 (major life activities are those of central importance to daily life).

[14] *See* 28 CFR § 35.104 ("The phrase has a record of such an impairment means has a history of . . . [the] mental or physical impairment."); *c.f. Rhoads v. FDIC,* 257 F.3d 373, 390 (4th Cir.

and wrongful termination claims would not be futile.  He will be granted leave to amend those claims.

> 2. Section 1983 Claim

Count II of Hinks's Second Amended Complaint alleges a 42 U.S.C. § 1983 claim against Aki in his individual capacity. The Court previously dismissed this claim because Hinks had not pled facts showing that Aki deprived him of a clearly established constitutional right, overcoming Aki's qualified immunity.  Mem. Op. 11.

Under § 1983, a plaintiff may bring a civil action to redress constitutional violations.  To state a claim, the plaintiff must allege that the defendant violated his constitutional rights while acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Thus, the Court must first determine "whether [Hinks] has alleged the deprivation of an actual . . . right at all" and if so, the Court must determine "whether that right was clearly

---

2001)(no record of disability when plaintiff stopped suffering effects of alleged disability during childhood).

established at the time of [Aki's] alleged violation." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999).

Hinks seeks to allege that Aki denied his right to "free speech, guaranteed by the First Amendment" and that he was "retaliated against for complaining about [Aki's] discriminatory practices." 2d Amend. Compl. ¶ 24. He also alleges that Aki caused a "denial of substantive due process . . . in that [Aki's] conduct was arbitrary and capricious." *Id.*

a. First Amendment Claim

To show a retaliation-based First Amendment violation by Aki, Hinks must allege that: (1) he engaged in protected expression regarding a matter of public concern; (2) Aki deprived him of a valuable benefit of employment; and (3) there was a causal link between his protected expression and the loss of the benefit. *Bosse v. Baltimore Cnty.,* 692 F. Supp. 2d 574, 592 (D. Md. 2010). The Defendants argue that Hinks's Second Amended Complaint does not allege that he spoke on a matter of public concern. Defs.' Opp'n 7.

Matters of public concern are those of "great social, political, or other interest to a community." *Ridpath v. Bd. of Governors of Marshall Univ.,* 447 F.3d 292, 316 (4th Cir. 2006) (internal quotation marks omitted). "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech

about matters of public concern . . . but are matters more immediately concerned with the self-interest of the speaker as employee." *Stroman v. Colleton Cnty. Sch. Dist.,* 981 F.2d 152, 156 (4th Cir. 1992).

When a public employee's speech addresses only a personal interest, "a federal court is not the appropriate forum in which to view the wisdom of a personnel decision . . . allegedly [taken in] reaction to the employee's behavior." *Connick v. Myers,* 461 U.S. 138, 147 (1983). Whether speech addresses a public concern or expresses a private grievance is determined by its "content, form, and context." *Stroman,* 981 F.2d at 156.

Hinks alleges that he "complain[ed] about [Aki's] discriminatory practices . . . against him" to the school principal and a union official. 2d Amend. Compl. ¶¶ 8 & 24. Although allegations of unlawful discrimination within a public school are matters of public significance, *c.f. Love-Lane v. Martin,* 355 F.3d 766, 776 (4th Cir. 2004), "not all speech on matters of public significance is 'public concern' speech." *Pappas v. Giuliani,* 290 F.3d 143, 152 (2d Cir. 2002)(*citing Connick,* 461 U.S. at 147-48). The critical inquiry is "whether the speech is made primarily in the employee's role as citizen or primarily in his role as employee." *Urofsky v. Gilmore,* 216 F.3d 401, 407 (4th Cir. 2000).

Hinks has not alleged any facts showing that his speech was anything but "the expression of a disgruntled employee." *Saleh v. Virginia State Univ.,* 1999 WL 34798179, at *23 (E.D. Va. Feb. 25, 1999). He asserts only "mistreatment directed at him personally, and which apparently affected only him." *Sulehria v. City of New York,* 670 F. Supp. 2d 288, 318 (S.D.N.Y. 2009). "Complaints of [unlawful] discrimination—an issue of overwhelming social importance—are not 'public concern' speech if they relate only to a personal employment grievance." *Pappas,* 290 F.3d at 152.[15]

Hinks's First Amendment allegations are insufficient to state a § 1983 claim. Amendment of his complaint to include these allegations would be futile.

### b. Substantive Due Process Claim

To show that Aki violated his substantive due process rights, Hinks must allege: (1) a fundamental interest protected by the Fourteenth Amendment (2) that Aki deprived him of (3)

---

[15] *See also Saulpaugh v. Monroe Comty. Hosp.,* 4 F.3d 134, 143 (2d Cir. 1993)(affirming dismissal of employee's retaliation claim when allegations only showed that complaints were "motivated by and dealt with [employee's] individual employment situation"); *c.f. Campbell v. Galloway,* 483 F.3d 258, 269 (4th Cir. 2007)(letter to police chief was public concern speech when it complained of gender discrimination towards plaintiff and "other females" and plaintiff "challenge[d] the practice within the department as much as she [sought] resolution of her own complaint").

13

while acting under color of state law.[16] *See Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 719 (4th Cir. 1991); *Rivera v. Rhode Island,* 402 F.3d 27, 33-34 (1st Cir. 2005).

Hinks's Second Amended Complaint does not allege the fundamental right of which Aki deprived him.[17] Rather, he alleges there was a "[c]onstitutional deprivation[]" of "substantive due process" because Aki's conduct was "arbitrary and capricious." 2d Amend. Compl. ¶ 24. Such conclusionary legal terms do not correct his pleadings. *See Midgal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 326 (4th Cir. 2001). Amendment to include these allegations would be futile.

Hinks will not be granted leave to amend his § 1983 claim against Aki, and that claim will be dismissed with prejudice.[18]

---

[16] Hinks has alleged that Aki had supervisory authority over him, set his work hours, and directed his work tasks. 2d Amend. Compl. ¶ 8. At the pleading stage, this is sufficient to show that Aki, a county employee, acted under color of state law. *See Tann v. Ludwikoski,* 2010 WL 3262211, at *1 (4th Cir. Aug. 18, 2010)(alleging state employment is generally sufficient to show action under color of state law); *c.f. Hughes v. Halifax Cnty. Sch. Bd.*, 855 F.2d 183, 186-87 (4th Cir. 1988)(coworkers' assault on county employee not committed under color of state law when coworkers had no authority over plaintiff).

[17] Fundamental rights are those rights "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997)(internal citations omitted).

[18] *See Custer v. Sweeney,* 89 F.3d 1156, 1163 (4th Cir. 1996)(affirming dismissal with prejudice when plaintiff failed to properly amend complaint after court's explicit direction on claim's deficiencies).

3. IIED Claim

Count IV of Hinks's Second Amended Complaint alleges claims for intentional infliction of emotional distress. The Court previously dismissed these claims because Hinks failed to plead facts showing he suffered severe emotional distress.[19] Mem. Op. 14. Hinks seeks to amend his IIED claims to allege that he "suffers extreme emotional distress and physical manifestations thereof, including but not limited to, depression to the point of becoming uncommunicative and reclusive . . . refusal to disclose or discuss the terrible things that happened to him . . . [and] refusal to engage in his favorite activities." 2d Amend. Compl. ¶ 16. He also alleges that the Defendants' conduct has "prevented [him] from being able to work" and that he "is not expected to be able to work" in the future. *Id.*

Under Maryland law, "severe emotional distress" must "disrupt [the plaintiff's] ability to function on a daily basis." *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 750 (D. Md. 1996). As a matter of law, it is insufficient that a plaintiff feels "distressed and ashamed" or becomes less social. *See id.* However, emotional distress that disrupts the plaintiff's "ability to attend work or to look for

---

[19] In his Amended Complaint, Hinks alleged that the "Defendants' misconduct has proximately caused the Plaintiff to suffer extreme emotional distress and physical manifestations thereof." Amend. Compl. ¶ 16.

a new job" is severe. *Id.* Amendment of Hinks's IIED claims would not be futile, and leave will be granted to amend those claims.

    4. Retaliation Claim

Hinks also seeks to amend and clarify his Rehabilitation Act retaliation claim against the Board. Because the claim was not addressed in the Defendants' motion to dismiss, this Court did not dismiss it; the Board now consents to Hinks's proposed amendment. Defs.' Opp'n 2. Leave will be granted to amend the retaliation claim.

III.   Conclusion

For the reasons stated above, Hinks's motion for reconsideration will be granted, and his motion for leave to file an amended complaint will be granted in part and denied in part.

| | |
|---|---|
| December 6, 2010 | _____/s/_____ |
| Date | William D. Quarles, Jr.<br>United States District Judge |